1  David D. Sohn (SBN 221119)
   david@sohnlegal.com
2  SOHN LEGAL GROUP, P.C.
   425 California Street, 19th Floor
3  San Francisco, CA  94104
   Tel:    (415) 421-1300
4  Fax:    (415) 421-1815

5  David Borgen (SBN 099354)
   dborgen@gbdhlegal.com
6  Laura L. Ho (SBN 173139)
   lho@gbdhlegal.com
7  GOLDSTEIN, BORGEN, DARDARIAN & HO
   300 Lakeside Drive, Suite 1000
8  Oakland, CA  94612
   Tel:    (510) 763-9800
9  Fax:    (510) 835-1417

10  Attorneys for Plaintiff and the Putative Class

11                    UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13

14  MARTHA MORAZAN, individually, and on        Case No.: 13-CV-00936-YGR
    behalf of all others similarly situated,
15                                              CLASS AND REPRESENTATIVE ACTION
              Plaintiffs,
16                                              **PLAINTIFF'S MOTION FOR FINAL
    vs.                                         APPROVAL OF SETTLEMENT AND
17                                              RESPONSE TO OBJECTION**
    ARAMARK UNIFORM & CAREER
18  APPAREL GROUP, INC., A California           Date:    November 12, 2013
    corporation; ARAMARK UNIFORM &              Time:    2:00 p.m.
19  CAREER APPAREL, INC., a California          Crtrm:   5
    corporation; ARAMARK UNIFORM                Before:  Hon. Yvonne Gonzalez Rogers
20  SERVICES, INC., a California corporation;
    ARAMARK UNIFORM & CAREER                    Trial Date:  None Set
21  APPAREL, LLC, a California limited liability
    corporation; and DOES 1-20, inclusive,
22
              Defendants.
23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION ................................................................................ 1

I.    INTRODUCTION ............................................................................. 1

II.   OVERVIEW OF SETTLEMENT ..................................................... 3

III.  RELEVANT BACKGROUND .......................................................... 7

    A.    The Court Preliminarily Approved the Present Settlement ..................... 7

    B.    Notice of the Settlement Has Been Given In Compliance with the
Court's Order .......................................................................................... 7

    C.    The Court Denied Objectors' Motion to Intervene ............................... 8

    D.    Four Class Members Have Submitted a Single Objection and Seven Class
Members Have Opted Out ....................................................................... 9

IV.   ARGUMENT ................................................................................... 9

    A.    The Settlement is Fair, Reasonable, and Adequate and Should be Finally
Approved ................................................................................................ 9

        1.    The Strength of Plaintiff's Case Supports Final Approval ...................... 10

        2.    The Risk of Defeat at Class Certification and on the Merits
Supports Final Approval ............................................................. 11

        3.    The Expense, Complexity, and Potential for Delay in Litigating
this Case Through Trial Supports Final Approval of Settlement .............. 13

        4.    The Amount Offered in Settlement Supports Final Approval .................. 13

        5.    The Settlement Class has Responded Favorably to the Proposed
Settlement ................................................................................. 14

        6.    The Exchange of Informal Discovery Permitted the Parties to Evaluate
the Strengths and Weaknesses of the Claims and Defenses Herein .......... 15

        7.    No Government Entity is Involved in the Settlement ............................ 16

    B.    The Court Should Finally Certify the Settlement Class ......................... 16

    C.    No Settlement Class Members Have Objected to the Service Award for
Plaintiff Morazan .................................................................................. 17

    D.    The Objection of the Marincovich Plaintiffs Should be Overruled ........ 17

494776.20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1.   Objectors' Contentions Regarding the Adequacy of the Settlement Amount Lack Merit ................................................................. 17

2.   Objectors' Claim that the Plaintiff has Failed to Provide Adequate Information Regarding Class Damages is Unfounded ............................. 19

3.   The Settlement was the Product of Non-Collusive, Arm's-Length Negotiations ................................................................................ 20

4.   Plaintiff Morazan is an Adequate Class Representative ........................... 21

5.   Plaintiff Morazan's Claims are Typical of Those of the Settlement Class ...................................................................... 22

6.   The Release is Fair and Reasonable ........................................... 24

7.   The Requested Attorneys' Fees are Reasonable ...................................... 24

V.   CONCLUSION ................................................................... 26

494776.20

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Federal Cases**

4

*Aguiar v. Cal. Sierra Exp., Inc.*,
   No. 2:11–cv–02827–JAM–GGH, 2012 WL 1593202 (E.D. Cal. May 4, 2012)....................20

5

*Alba v. Papa John's USA, Inc.*,
   No. CV 05-7487 GAF, 2007 WL 953849 (C.D. Cal. Feb. 7, 2007) .......................................23

6

7

*Barbosa v. Cargill Meat Solutions Corp.*,
   No. 1:11-cv-00275-SKO, 2013 WL 3340939 (E.D. Cal. July 2, 2013)................................24

8

9

*Barnes v. The Equinox Grp., Inc.*,
   No. C 10-3586 LB, 2013 WL 3988804 (N.D. Cal. Aug. 2, 2013) ....................................1, 14

10

*In re Bluetooth Headset Products Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ............................................................................................9, 25

11

12

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979)........................................................................................16

13

14

*by Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) ....................................................................................................10

15

16

*by Vinole v. Countrywide Home Loans, Inc.*,
   571 F.3d 935 (9th Cir. 2009) .................................................................................................23

17

*Campbell v. Vitran Exp., Inc.*,
   No. CV 11–05029–RGK, 2012 WL 2317233 (C.D. Cal. June 8, 2012)................................20

18

19

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ..................................................................................................10

20

21

*Cole v. CRST, Inc.*,
   No. EDCV 08-1570-VAP, 2012 WL 4479237 (C.D. Cal. Sept. 27, 2012)...........................20

22

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013) ...........................................................................................................12

23

24

*Cornn v. United Parcel Serv. Inc.*,
   No. C03-2001 TEH, 2005 WL 588431 (N.D. Cal. Mar. 14, 2005)........................................23

25

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
   No. C 06-3903 TEH, 2008 WL 7863877 (N.D. Cal. Oct. 22, 2008) .....................................17

26

27

*Davis v. Four Seasons Hotel Ltd.*,
   277 F.R.D. 429 (D. Haw. 2011) .............................................................................................23

28

iii

494776.20

*Dilts v. Penske Logistics LLC*,
   819 F. Supp. 2d 1109 (S.D. Cal. 2011) ............................................................. 20

*Dukes v. Wal-Mart, Inc.*,
   509 F.3d 1168 (9th Cir. 2007)
   *on reh'g en banc sub nom. Dukes v. Wal-Mart Stores, Inc.*,
   603 F.3d 571 (9th Cir. 2010) *rev'd on other grounds*, 131 S. Ct. 2541 (2011) ................. 3, 23

*Esquivel et al. v. Vistar Corp. et al.*,
   No. 2:11-cv-07284-JHN-RJWx, 2012 WL 516094 (C.D. Cal. Feb. 8, 2012) ........................ 20

*Franco v. Ruiz Food Prods., Inc.*,
   No. 1:10-cv-02354-SKO, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ............................ 25

*Fraser v. Asus Computer Int'l*,
   No. C 12-00652 WHA, 2013 WL 3595940 (N.D. Cal. July 12, 2013) ................................ 24

*Garcia v. Gordon Trucking, Inc.*,
   No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) ............... 18, 25

*Glass v. UBS Fin. Servs. Inc.*,
   No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ...................................... 15

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .............................................................................. *passim*

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) .............................................................................. 22

*Hopson v. Hanesbrands Inc.*,
   No. CV-08-0844 EDL, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009) ...................................... 19

*Kamar v. Radio Shack Corp.*,
   254 F.R.D. 387 (C.D. Cal. 2008) *aff'd* 375 F. App'x 734 (9th Cir. 2010) ............................ 22

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) .............................................................................. 17

*Lazarin v. Pro Unlimited, Inc.*,
   No. C11-03609 HRL, 2013 WL 3541217 (N.D. Cal. July 11, 2013) .................................... 18

*Lewis v. Starbucks Corp.*,
   No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690 (E.D. Cal. Sept. 11, 2008) ................... 16

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) .................................................................... 2, 17, 18

*Marshall v. Holiday Magic, Inc.*,
   550 F.2d 1173 (9th Cir. 1977) ............................................................................. 16

iv

494776.20

*McKenzie v. Fed. Exp. Corp.*,
   275 F.R.D. 290 (C.D. Cal. 2011)........................................................................21

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ...........................................................................15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004)..........................................................1, 9, 13, 14

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ..........................................................9, 10, 17, 18

*Oppenlander v. Standard Oil Co. (Ind.)*,
   64 F.R.D. 597 (D. Colo. 1974) .........................................................................13

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .......................................................................10, 18

*Russell v. United States*,
   No. C 09-03239 WHA, 2013 WL 3988778 (N.D. Cal. Aug. 2, 2013)....................24

*Satchell v. Fed. Exp. Corp.*,
   No. C 03-2659 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ........................21

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ....................................................................3, 9, 23

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. M 07-1827 SI, 2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) ...........................25

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ................................................................................9

*In re Toyota Motor Corp. Unintended Acceleration Mktg.,*
   *Sales Practices, & Products Liab. Litig.,*
   No. 8:10ML 02151 JVS, 2013 WL 3224585 (C.D. Cal. June 17, 2013) ...................10, 11, 14

*Vasquez v. Coast Valley Roofing, Inc.*,
   266 F.R.D. 482 (E.D. Cal. 2010) ...................................................................12, 13

*Vasquez v. Coast Valley Roofing, Inc.*,
   670 F. Supp. 2d 1114 (E.D. Cal. 2009) ..............................................................21

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ......................................................................................12

*Wiegele v. Fedex Ground Package Sys., Inc.*,
   No. 06cv1330, 2008 WL 410691 (S.D. Cal. Feb. 12, 2008).................................23

494776.20

*Williams v. Centerplate, Inc.*,
  No. 11-CV-2159 H-KSC, 2013 WL 4525428 (S.D. Cal. Aug. 26, 2013) .................... 1, 14, 24, 25

*Wren v. RGIS Inventory Specialists LLC*,
  No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. April 1, 2011) ........................... 1, 14, 21

*Zulewski v. The Hershey Co.*,
  No. 4:11-CV-05117-KAW, 2013 WL 4570153 (N.D. Cal. Aug. 16, 2013) .......................... 24

**California Cases**

*Collins v. Overnite Transp. Co.*,
  105 Cal. App. 4th 171 (2003) ................................................................................. 19

*Duran v. U.S. Bank Nat'l Ass'n.*,
  275 P.3d 1266 (Cal. 2012) ..................................................................................... 12

*See's Candy Shops, Inc. v. Super. Ct.*,
  210 Cal. App. 4th 889 (2012) ................................................................................ 12

**California Docketed Cases**

*Marincovich v. Aramark Uniform & Career Apparel Group, Inc.*,
  Case No. BC494530 (Los Angeles Cnty. Super. Ct.) ............................................ 2, 19, 20, 23

**Federal Statutes**

Federal Aviation Administration Authorization Act of 1994 ...................................... 20

**California Statutes**

California Motor Carrier Act ............................................................................... 19, 20

Lab. Code
  § 203 .................................................................................................................. 5, 11
  § 226 ............................................................................................................ 4, 10, 11
  § 510 ....................................................................................................................... 23
  § 511 ....................................................................................................................... 23
  § 514 ....................................................................................................................... 19
  § 1194 ..................................................................................................................... 23
  § 2699(i) ............................................................................................................... 6, 7
  § 2699(e)(2) ............................................................................................................ 18

Private Attorneys General Act of 2004 ............................................................... 4, 16

494776.20

**Federal Rules**

Fed. R. Civ. P.
    23(a) ................................................................................................ 16, 21, 22
    23(b)(3) ....................................................................................................... 16
    23(e) ............................................................................................................ 9
    30(b)(6) ...................................................................................................... 12

**California Regulations**

Cal. Code Regs., Title 8
    §§ 11010(3)(A)(2)(a) ................................................................................. 19

**Other Authorities**

1 William B. Rubenstein, Alba Conte, & Herbert B. Newberg,
    *Newberg on Class Actions* (5th ed. 2011) ........................................... 22, 23

4 Alba Conte & Herbert B. Newberg,
    *Newberg on Class Actions* (4th ed. 2002) ........................................... 13, 21

8 Alba Conte & Herbert B. Newberg,
    *Newberg on Class Actions* (4th ed. 2002) ............................................... 12

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND RESPONSE TO OBJECTION

494776.20

## <u>NOTICE OF MOTION</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 12, 2013, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5 of the United States District Court of the Northern District of California, located at 1301 Clay Street, Oakland, California, the Honorable Yvonne Gonzalez Rogers presiding, Plaintiff Morazan will and hereby does move this Court for Final Approval of Class Action Settlement.  The motion is based on this notice of motion and motion, the attached memorandum of points and authorities, the Declarations of David Borgen, David Sohn, and Jennifer M. Keough, the proposed order, the pleadings and papers filed in this case, and any oral argument this Court permits. Defendant Aramark does not oppose this motion.

Dated:  October 11, 2013                   Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO


___/s/ Laura L. Ho_____
Laura L. Ho

Attorneys for Plaintiff and the Putative Class

494776.20

# I.    INTRODUCTION

Plaintiff moves this Court for final approval of the settlement.  The Court granted preliminary approval on June 25, 2013.  Since that time, the claims administrator has distributed notice to 3,307 class members in compliance with the Court's preliminary approval Order.   Fifty eight percent (58%) of the class, or 1,914 class members, have submitted claim forms.[1]  Seven class members have requested exclusion, and only one objection has been filed on behalf of four class members (just 0.12% of the class).  Accordingly, the settlement class has responded very favorably to the proposed settlement.  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.")

The class's positive response is unsurprising given the substantial, guaranteed monetary relief provided by the settlement.  As discussed below, the non-reversionary settlement amount of $2,750,000, which after reductions for administration costs, the proposed service award, the PAGA payment, and reasonable attorneys' fees and costs, will yield an average pre-tax award of $607.  This represents nearly 50 hours of straight-time wages at Plaintiff and Class Representative Martha Morazan's hourly rate.  Moreover, 1,184 class members, who represent 36% of the settlement class, will receive awards in excess of $1,000.  The awards provided herein compare favorably with those approved in similar wage and hour class action settlements.  *See, e.g.*, *Williams v. Centerplate, Inc.*, No. 11-CV-2159 H-KSC, 2013 WL 4525428, at *4 (S.D. Cal. Aug. 26, 2013) (providing average award of $108 in wage and hour class settlement involving similar claims); *Barnes v. The Equinox Grp., Inc.*, No. C 10-3586 LB, 2013 WL 3988804, at *2 (N.D. Cal. Aug. 2, 2013) (providing average award of $146.53 and maximum award of $719.02 in wage and hour class settlement involving similar claims); *Wren v. RGIS Inventory Specialists LLC*, No. C-06-05778 JCS, 2011 WL 1230826, at *37 (N.D. Cal. April 1, 2011) (providing average award of $207.69 in in wage and hour class settlement involving similar claims).  When the monetary benefit of the settlement is balanced against the inherent risks of continued, protracted litigation, including potential

---

[1] The 1,914 claim forms include both timely (1,883) and untimely claim forms (33).  Under the terms of the Joint Stipulation, Aramark has the discretion to accept these claim forms as timely.  Joint Stipulation § 7.2.4.  All class members who do not opt out will receive a share of the settlement, but those who submitted claim forms will receive an additional amount.

1    defeat at class certification and on the merits, the fairness, adequacy, and reasonableness of the proposed

2    settlement is confirmed.

3         A single objection has been filed on behalf of four class members: Mitchell Marincovich, Ryan

4    Compton, Earnest Harrison, and Vincent Nava[2] ("Objectors").  Mr. Marincovich and Mr. Compton are the

5    named plaintiffs in the matter of *Marincovich v. Aramark Uniform & Career Apparel Group, Inc*., Case

6    No. BC494530 (Los Angeles County Superior Court), which asserts nearly identical claims on behalf of

7    Aramark Route Sales Representatives ("RSRs").  Objectors represent only themselves as individuals and

8    do *not* represent RSR class members because class certification has not been granted in their case and they

9    have not been appointed as class representatives – either through settlement approval or a contested class

10   certification proceeding.  ECF No. 42 (Ho Decl. Pl.'s Opp'n to Mot. to Shorten Time ¶ 2, Ex. A).

11   Furthermore, 640 of 1036 (62%) RSR class members have submitted claim forms.  Borgen Decl. ¶ 32.

12        Instead of opting out and pursuing their individual claims, these settlement class members seek

13   disapproval of the settlement on seven grounds.[3]  As discussed in detail in Section IV. E, the Objectors'

14   arguments lack merit.  Based on speculative and overstated damages calculations, and without taking into

15   account the risks on class certification, liability, and damages, these four class members claim that Plaintiff

16   should have obtained more in settlement, especially for RSR employees.  The Ninth Circuit has repeatedly

17   rejected such an argument as the basis to disapprove a class settlement.  *See, e.g.*, *Hanlon v. Chrysler*

18   *Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we

19   address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair,

20   adequate and free from collusion."); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)

21   ("Thus, the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of

22   highest hopes.  As the Second Circuit has pointed out: The fact that a proposed settlement may only

23

24

25   [2] Mr. Nava's objection is untimely and has not been accepted, however, he seeks only to join the objection filed on behalf of Mr. Marincovich, Mr. Compton, and Mr. Harrison.

26   [3] Objectors claim that "(1) Morazan is not an adequate representative of the Route Sales Representative (RSR) Class; (2) the release is overbroad; (3) the settlement falls outside the possible range of

27   reasonableness; (4) there is insufficient evidence to support the request for final approval; (5) the settlement terms are not fair or adequate for RSR class members; (6) there are suspicious circumstances surrounding

28   the manner in which the case was settled such that there is the inference of collusion; and (7) the attorneys' fees requested are not fair or reasonable."  ECF No. 71 (Objection at 1).

1  amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlements

2  grossly inadequate and should be disapproved.") (internal quotations and citations omitted).

3       The Objectors also challenge the adequacy and typicality of Plaintiff Morazan to represent the

4  settlement class.  This objection also lacks merit.  Plaintiff Morazan has no conflicts with the class, and has

5  fulfilled her obligation to safeguard the interests of the class.  ECF No. 60 (Morazan Decl. Pl.'s Settlement

6  Mot. & Mot. for Service Award ¶ 12).  Moreover, her claims are typical of the class, including those of

7  RSRs, because they are based on the same or similar wage and hour policies and practices of Aramark.

8  The fact that she worked as a Distribution Operator, and not an RSR, does not preclude such representation.

9  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *Dukes v. Wal-Mart, Inc.,* 509 F.3d 1168, 1174,

10  1184 (9th Cir. 2007) *on reh'g en banc sub nom. Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir.

11  2010) *rev'd on other grounds*, 131 S. Ct. 2541 (2011).

12       Plaintiff's request for a service award and reasonable attorneys' fees and costs are the subject of

13  separate motions filed on August 13, 2013.  ECF Nos. 59 & 54.  Objectors claim that the fees requested by

14  Class Counsel are unreasonable.  Aside from their criticisms of the settlement, however, Objectors provide

15  no basis for this claim: they do not challenge Class Counsel's hourly rates or the amount of time expended

16  on the litigation.  Accordingly, Objectors have presented the Court with no basis to justify a departure from

17  the benchmark, 25% common fund fee award requested by Plaintiff.  Neither Objectors nor any other class

18  member oppose Plaintiff Morazan's service award.

19       In short, the single objection to the proposed settlement should be overruled, and the settlement

20  finally approved.

21                   **II.**       **OVERVIEW OF SETTLEMENT**

22       The proposed settlement resolves all wage and hour claims alleged against Aramark.  A summary

23  of the Settlement follows:

24       1.    <u>Settlement Fund</u> – Aramark will deposit $2,750,000.00 ("Maximum Settlement Amount")

25  in a Qualified Settlement Fund within fifteen (15) calendar days of the Effective Date.  *See* ECF No. 26-1

26  (Joint Stipulation § 7.4.1).  This amount is inclusive of payments to the class attributed to wages, penalties,

27  and interest, Class Counsel's attorneys' fees, costs, and expenses, Plaintiff Morazan's proposed Service

28  Payment, payments made under the Private Attorneys General Act of 2004, and costs of settlement

1    administration.  ECF No. 26-1 (Joint Stipulation § 2.21).  Separate from the Maximum Settlement Amount,

2    Aramark will pay the employer's share of any payroll taxes resulting from this settlement.  *Id.*  This is a

3    fixed common fund settlement amount, and none of the Settlement Fund shall revert to Aramark.

4          2.     <u>Class Definition and Class Period</u> – This Settlement Class is defined as "… all current and

5    former employees of the ARAMARK Releasees who were not classified by the ARAMARK Releasees as

6    salaried, exempt employees and who work or worked for any ARAMARK Releasees or their predecessors,

7    assigns and/or related companies at locations in California at any time from October 24, 2008 through the

8    Preliminary Approval Date ("Class Period").  The Class includes, but is not limited to, persons employed in

9    the following position categories and/or job titles: production workers (including but not limited to

10   washers, extractor/puller-loader/heavy tumbler, utility, operators, feeder/folder/stacker/towel

11   folder/spreader, truck loader/wet sorter/roller towel winder, and other production employees), machinists,

12   mechanics, engineers, clerical/office staff, maintenance employees, Route Sales Representatives ("RSRs),

13   shuttle drivers, and relief drivers."  *Id.* § 2.6.  The class period is defined as the time period between

14   October 24, 2008 through the Preliminary Approval Date (June 25, 2013).  *Id.* § 2.9.

15         3.     <u>Scope of Release and Final Judgment</u> – The class release contemplated by the proposed

16   Settlement releases all claims alleged in the Complaint, as well as any wage and hour claims and pay

17   claims that could have been asserted in this action.  Upon final approval of the Settlement Fund, the parties

18   will seek dismissal of the entire case with prejudice and final judgment on all of the class claims.  *Id.*

19   § 2.26.

20         4.     <u>Method of Allocation</u> – The amount available to settlement class members will equal the

21   Maximum Settlement Amount less Court-approved attorneys' fees, costs, and expenses, settlement

22   administration costs, any Court-approved Service Payment, and payments to the State of California for

23   PAGA penalties (hereafter "Settlement Pool").  *Id.* § 2.32.  The Settlement Pool will be distributed to

24   settlement class members who do not opt out *pro-rata* based on the number of weeks worked by each class

25   member during the limitations period.  *Id.* §§ 6.7.1 and 6.7.2.  Workweeks occurring between

26   November 20, 2011 and the date of preliminary approval shall be weighted at the rate of 1.1 to account for

27   the availability of Private Attorney General Act ("PAGA") penalties and Labor Code section 226 penalties.

28   *Id.*  Similarly, workweeks for settlement class members whose employment terminated prior to the

494776.20

Preliminary Approval Date and after November 20, 2009, will be credited with an additional two (2) workweeks to recognize the potential recovery of Labor Code § 203 waiting time penalties for those settlement class members.  *Id.*  The Settlement Pool will be divided by the total number of weeks to produce a dollar amount.  *Id.* § 6.7.1(c).  Individual settlement awards will be determined by multiplying this dollar amount by the number of eligible weeks worked.  *Id.*  Settlement class members who submit timely and valid claim forms will receive an additional *pro rata* share of 5% of the unclaimed funds, whereas Class Members who do not submit claim forms will share in 95% of the unclaimed funds.  *Id.* § 6.7.1(d).

5.    Claims Procedure – Settlement class members who submitted timely and valid Claim Forms prior to September 16, 213 will receive their *pro rata* share of the Settlement Pool plus an additional 5% of the remaining funds.  *Id.* §§ 6.7.1(b), (d).  settlement class members who do not submit timely and valid Claim Forms, but who endorse the settlement check sent to him/her by the Claims Administrator, will receive a *pro rata* share of 95% of the unclaimed funds remaining in the Settlement Pool.  *Id.* §§ 6.7.1(d) and 6.7.2.  This is referred to in the Settlement Agreement as the "Late Participating Claimants' Pool."  *Id.* § 6.7.2(a).  By submitting claim forms, settlement class members are affirmatively opting in to the FLSA portion of this settlement.  Although the Parties agree that settlement class members may elect to become a party plaintiff for the FLSA portion of the settlement by endorsing the check sent to him/her by the Claims Administrator, the claims procedure is designed to incentivize FLSA participation via Claim Forms.  *Id.* § 2.3.

6.    Claims Administration – The Parties have selected Garden City Group to serve as the Claims Administrator.  *Id.* § 2.4.  The Claims Administrator has already completed many of its duties, which include distributing the Settlement Notice, receiving Claim Forms, calculating individual settlement payments, and reporting to the Court on the notice/claim form/opt out process and distribution of the Settlement Pool.  If this settlement is approved, Garden City Group will complete the administration of the Settlement Fund, which includes drawing and distributing checks to the settlement class members, and filing any necessary tax reporting for the Settlement Fund, The costs of claims administration are estimated at approximately $26,250 and will not exceed a cap of $30,000.  *Id.* § 6.2.1.

494776.20

7.     <u>Class Notice</u> – The Court-approved Settlement Notice explained the terms of the settlement and how to receive a Settlement Payment, object, and/or opt out.  In order to claim his or her share of the Settlement Pool, a Settlement Class Member were required to submit to the Claims Administrator an executed Claim Form postmarked prior to September 16, 2013 (sixty (60) calendar days from the initial mailing of the Notice).  *Id.* § 7.2.4.  All objections and requests for exclusion were required to be post-marked by September 3, 2013 (forty-five (45) days from the initial mailing of the Notice).  *Id.* §§ 7.2.5, 7.2.7.  Each Claim Form included an individualized computation of the approximate amount of the individual settlement award that the particular Settlement Class Member will receive from the Settlement Pool, how that amount was calculated, and how the number of work weeks used to calculate their settlement payment can be challenged.

8.     <u>Tax Consequences of Settlement Payments</u> – Each Participating Settlement Class Member's individual settlement payment will be treated as 1/3 wages, 1/3 penalties, and 1/3 non-taxable interest, unless such treatment of the payments is contrary to an IRS letter ruling.  *Id.* § 6.7.3.  The Claims Administrator shall issue to Participating settlement class members the appropriate tax reporting form(s) (i.e. W-2 and 1099) for payments made to the Class.

9.     <u>PAGA Penalties</u> – The Parties have agreed to allocate $10,000 to the payment of PAGA penalties of which 75% must be provided to the California Labor and Workforce Development Agency and 25% must be provided to the Settlement Class.  *Id.* § 6.5.1; Cal. Lab. Code § 2699(i).  Following the effective date of the settlement, the Claims Administrator will send a check in the amount of $7,500 to the California Labor and Workforce Development Agency.

10.    <u>Class Counsel's Attorneys' Fees, Costs, and Expenses</u> – The Settlement Agreement provides that Defendants will not oppose Class Counsel's application for attorneys' fees, costs, and expenses so long as it does not exceed 33% of the total Settlement Fund.  ECF No. 26-1 (Joint Stipulation § 6.4.1).  Class Counsel's fee application is the subject of a separate motion filed on August 13, 2013, in which Plaintiff has asked for fees of 25% of the total Settlement Fund and reimbursement of actual costs in the amount of $10,148.19.[4]  ECF No. 54.  Defendant has filed a statement of non-opposition to Plaintiff's application for fees and costs.  ECF No. 69.

---

[4] Class Counsel have incurred an additional $74.64 in out of pocket costs since filing their Motion for

1    11.    Class Representative Service Payments – Plaintiff Morazan requests a service award of

2  $5,000.00.  ECF No. 26-1 (Joint Stipulation § 6.3).  This request is the subject of a separate motion filed on

3  August 13, 2013.  ECF No. 59.  Defendant has filed a statement of non-opposition to Plaintiff's application

4  for a service award.  ECF No. 69.

5                          **III.    RELEVANT BACKGROUND**

6  **A.    The Court Preliminarily Approved the Present Settlement**

7         In its June 25, 2013 Order granting preliminary approval, the Court, among other things:

8  (1) approved distribution of a class notice; (2) set a 45-day period for class members to opt out or object to

9  the settlement; (3) set a deadline (21 days prior to the opt-out/objection deadline) for the filing of Plaintiff's

10  Motion for Service Award and Class Counsel's Motion for Reasonable Attorneys' Fees, Costs and

11  Expenses; and (4)  scheduled the final approval hearing for November 12, 2013.  ECF No. 37.  The Court

12  also determined that the Settlement was within the range of reasonable settlements that could ultimately be

13  granted final approval, appeared to be the product of non-collusive, arm's-length negotiations between

14  well-informed counsel, and thus was presumptively valid, and that, on a preliminary basis, the $2,750,000

15  Maximum Settlement Amount appeared to be fair and reasonable to all class members.  *Id*.

16  **B.    Notice of the Settlement Has Been Given In Compliance with the Court's Order**

17         On July 12, 2013, the Claims Administrator, the Garden City Group ("GCG"), received a data file

18  from Defendant Aramark containing class member contact information.  *See* Declaration of Jennifer M.

19  Keough Regarding Notice and Claims Administration ("Keough Decl.") ¶ 3, filed herewith.  GCG

20  processed the class member addresses through the National Change of Address database, which resulted in

21  updated address information for 285 class members.  *Id*. ¶ 4.  On July 18, 2013, GCG mailed individualized

22  notices to the last known addresses of 3,307 class members.  *Id*. ¶ 5.  Class Counsel also posted the notice

23  on GBDH's website.  *See* Declaration of David Borgen in Support of Plaintiff's Motion for Final Approval

24  of Settlement and Response to Objection ("Borgen Decl.") ¶ 30, filed herewith.  The notice, which the

25  Court carefully considered and previously approved, fairly and clearly described the following: (1) the

26  proposed Settlement terms for monetary relief; (2) the amounts requested for Plaintiff Morazan's service

27

28
_____

an Award of Reasonable Attorneys' Fees, Costs, and Expenses.  Sohn Decl. ¶ 14; Borgen Decl. ¶ 36.

494776.20

1   award and the attorneys' fees and costs; (3) the manner in which class members could object to the

2   settlement; (4) an estimated individual settlement award for each class member and the process for

3   challenging the number of workweeks allocated to each Class Member; and (5) the manner in which class

4   members could opt out of or object to the Settlement.  Keough Decl. ¶ 5, Ex. A.

5           GCG included a toll free number in the settlement notice, which class members can call for

6   information about the settlement.  *Id*. ¶ 8.  This toll-free number is answered by Communication Specialists

7   who speak both English and Spanish.  *Id*.  As of September 29, 2013, GCG received a total of 215

8   incoming calls, 91 of which were from Spanish speaking class members.  *Id*.  Class Counsel also received

9   and responded to 20 telephone and email inquiries from class members about the settlement.  Borgen Decl.

10  ¶ 30; Declaration of David D. Sohn in Support of Plaintiff's Motion for Final Approval and Response to

11  Objection ("Sohn Decl.") ¶ 13, filed herewith.

12          As of September 29, 2013, 117 notice packets were returned to GCG by the U.S. Postal Service

13  with forwarding information; GCG promptly re-mailed notice packets to those addresses.  Keough Decl.

14  ¶ 6.  311 notice packets were returned to GCG as undeliverable without forwarding information.  *Id*.  GCG

15  conducted an Advanced Address Search on each of these returned notice packets.  *Id*. ¶ 7.  Based on this

16  search, GCG found 130 updated address records and promptly re-mailed the notice packets to those

17  addresses.  *Id*.  Ultimately, the notice packet was delivered to all but 181 Class Members who could not be

18  located.  *See id.* ¶ 6-7.

19          Should the Court grant final approval, all class members who did not opt out will receive their *pro*

20  *rata* share of the settlement funds.  GCG will mail checks to the most current home addresses it has on file,

21  and with the assistance of Class Counsel, continue to search for any class members who do not have valid

22  current addresses.   Borgen Decl. ¶ 31.

23  **C.      The Court Denied Objectors' Motion to Intervene**

24          On July 8, 2013, Objectors Mitchell Marincovich and Ryan Compton filed a motion to intervene as

25  well as a motion to shorten time with respect to the hearing of the motion to intervene.  ECF Nos. 38 & 39.

26  Plaintiff Morazan and Defendants opposed both motions.  ECF Nos. 41, 44, 46, 49.  On July 15, 2013, the

27  Court denied Objectors' motion to shorten time.  ECF No. 45.  The Court heard Objectors' motion to

28  intervene on August 13, 2013, and denied it on September 3, 2013, as untimely.  ECF No. 70.

**D.**     **Four Class Members Have Submitted a Single Objection and Seven Class Members Have Opted Out**

GCG has received one timely objection on behalf of three class members (Mitchell Marincovich, Ryan Compton, and Earnest Harrison).  Keough Decl. ¶ 13, Ex. C.  One class member, Vincent Nava, submitted an untimely request to join the single objection.  *Id.*  These four class members represent just 0.12% of the settlement class.  Plaintiff responds to this single objection in Section IV.E below.  Similarly, only seven class members out of 3,307, or 0.21% of the settlement class, have requested exclusion.  *Id.* ¶ 12, Ex. B.  No class members have disputed the information on which their settlement awards were estimated.  *Id.* ¶ 11.

## IV.     ARGUMENT

**A.**     **The Settlement is Fair, Reasonable, and Adequate and Should be Finally Approved**

"Fed. R. Civ. P. 23(e) requires the district court to determine whether a proposed settlement is fundamentally fair, adequate and reasonable."  *Hanlon*, 150 F.3d at 1026.  The Court of Appeals will rarely overturn approval of a class action settlement unless "the terms of the agreement contain convincing indications that the incentives favoring pursuit of self-interest rather than the class's interests in fact influenced the outcome of the negotiations and that the district court was wrong in concluding otherwise."  *Staton*, 327 F.3d at 960.  To determine whether a settlement agreement is fair, adequate and reasonable, a district court must consider a number of factors including: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.  *Hanlon*, 150 F.3d at 1026; *see also In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375-76 (9th Cir. 1993).  The *Hanlon* factors are not exclusive, and one factor may deserve more weight than the others depending on the circumstances.  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  In some instances, "one factor alone may prove determinative in finding sufficient grounds for court approval."  *See Nat'l Rural Telecomms. Coop. v. DirectTV, Inc.*, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004) (citing *Torrisi,* 8 F.3d at 1376).  It is the

9

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND RESPONSE TO OBJECTION

settlement taken as a whole—rather than its component parts—that must be reviewed for overall fairness. *Hanlon*, 150 F.3d at 1026 (citing *Officers for Justice*, 688 F.2d at 628. As discussed below, the above factors support final approval of settlement.

### 1.   The Strength of Plaintiff's Case Supports Final Approval

In assessing the strength of Plaintiff's case, courts determine the likelihood of success on the merits and the range of possible recoveries. *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.,* No. 8:10ML 02151 JVS (FMOx), 2013 WL 3224585, at *7 (C.D. Cal. June 17, 2013). Courts, however, should not attempt to "reach any ultimate conclusions on the contested issues of fact and law," nor should the settlement be "judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. "Ultimately, the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Id.* (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 468 (2d Cir. 1974) *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Because precision is impossible, "ballpark valuations" are acceptable. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Here, Plaintiff believes her claims are strong. Plaintiff alleges that Aramark's practices resulted in the denial of compensation for all hours worked, including straight-time and overtime wages, the denial of 30-minute duty-free meal periods, and the denial of duty-free rest periods. ECF No. 23 (First Am. Compl. ¶¶ 3, 14-19, 33-70). Plaintiff alleges that Aramark implemented and enforced a rounding and attendance that resulted in class members working off the clock at the beginning and end of their shifts, as well as at the beginning and end of their meal periods. Plaintiff further alleges that Aramark violated California Labor Code section 226 by failing to provide accurate and itemized wage statements that, among other things, included the overtime rate of pay, and the actual number of straight-time and overtime hours worked by its employees. The absence of this information caused confusion and made it difficult for Aramark's employees to verify the accuracy of their wages without referencing other time records and documents. *Id.* ¶¶ 18, 64-70. These claims are based on policies and practices that appear to be applicable to all class members.

494776.20

Plaintiff's damages calculations—which were performed by an in-house statistician with significant experience calculating damages in similar wage and hour class actions—demonstrate that "the proposed settlement is a reasonable reflection of the strength of Plaintiff's case." *In re Toyota Motor Corp.,* 2013 WL 3224585, at *8.  With respect to unpaid straight time and overtime wages, Plaintiff estimates class damages to be approximately $1,736,775 assuming .25 hours of uncompensated time per work week per Settlement Class Member and 70% of the unpaid hours at overtime rates.  Borgen Decl. ¶ 19.  With respect to meal and rest period violations, Plaintiff estimates class damages to be approximately $1,285,375 assuming one missed meal or rest period per month per settlement class member.  *Id.* ¶ 20.  Simple interest calculated at 10% for the unpaid wages and meal and rest period premium pay amounts to $649,621.  *Id.* ¶ 22.  Moreover, class penalty damages for Labor Code §§ 203 and 226 amount to $3,280,473 and $2,702,950 respectively.  *Id.* ¶ 21.  Accordingly, based on reasonable assumptions, the settlement value represents 75% ($2,750,000 of $3,671,771) of the settlement class member' unpaid wage, meal and rest period, and interest damages, and 28% ($2,750,000 of $9,655,194) of the settlement class members' unpaid wage, meal and rest period, Labor Code §§ 203 & 226, and interest damages.  *Id.* ¶ 22.  The monetary recovery obtained by Plaintiff in settlement falls within the range of possible recoveries.  Moreover, it is fair, reasonable, and adequate when balanced against the substantial risk, uncertainty, and delay of continued litigation, which are discussed below.  Accordingly, the strength of Plaintiff's case favors final approval of settlement.

## 2. The Risk of Defeat at Class Certification and on the Merits Supports Final Approval

Notwithstanding the perceived strength of her claims, Plaintiff faces numerous obstacles to recovery.  Absent settlement, Aramark will vigorously litigate this matter.  In contested class certification proceedings, Aramark will likely contend that Plaintiff's claims are not suitable for class and collective action certification because individual issues predominate.  Aramark will likely argue *inter alia* that: (1) its policies for paying regular and overtime wages varied from facility to facility and employee to employee, (2) its meal period policies and practices and time recording practices varied significantly depending on the location at which the employee worked and his/her job duties, and (3) damages could not be calculated on a class wide basis.  While Plaintiff and her Counsel disagree with Aramark, and believe that each of these

494776.20

1    claims can be successfully proved on a class basis through a combination of company policy documents,

2    admissions, statistical sampling, and Rule 30(b)(6), expert, and representative class member testimony,

3    they recognize that such procedures raise complicated proof issues.  Plaintiff would be required to

4    demonstrate that Aramark's policies and procedures are substantially similar and were applied consistently

5    at Aramark's numerous facilities in California.  *See* 8 Alba Conte & Herbert B. Newberg, *Newberg on*

6    *Class Actions* § 24:40 (4th ed. 2002) (noting that a plaintiff seeking to certify a class of employees who

7    work at multiple employer locations must conduct discovery into the policies and practices at each facility,

8    and that "[s]ome courts have limited representation to the facility or department in which the plaintiff

9    employee has worked or to which she or he has applied, or have denied representation altogether.").  There

10   is no guarantee that Plaintiff would be able to obtain the evidence needed to certify this case as a class

11   action.  Borgen Decl. ¶ 24.

12          If the parties continued to litigate, Plaintiff would be forced to seek certification against a backdrop

13   of recent, pro-defendant class certification case law.  *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct.

14   2541 (2011); *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013).  Moreover, the California Supreme Court

15   will soon decide whether representative testimony and other forms of aggregate proof may be used to prove

16   liability in wage and hour class actions.  *See Duran v. U.S. Bank Nat'l Ass'n.*, 275 P.3d 1266 (Cal. 2012).

17   Given the current state of class action jurisprudence, Plaintiff faces genuine risk at the class certification

18   stage.

19          Plaintiff also faces significant risk in prevailing on the merits of her claims.  Aramark will likely

20   argue the following: (1) that its rounding policy is neutral on its face and therefore lawful (*see See's Candy*

21   *Shops, Inc. v. Super. Ct.*, 210 Cal. App. 4th 889 (2012)), (2) that any uncompensated hours worked are *de*

22   *minimis*; (3) that it provided meal periods and authorized and permitted rest periods in compliance with

23   California law; (4) that it did not improperly withhold, deduct and/or fail to pay all wages owed to

24   employees; and (5) that it paid all overtime that was owed under the law and subject to the terms of the

25   applicable Wage Orders and Labor Code provisions. Borgen Decl. ¶ 25.  While Plaintiff believes that she

26   would have prevailed on these issues and others, she recognizes that a finder of fact may find for Aramark

27   on any one or more of these issues and/or found the damages to be significantly less than what Plaintiff has

28   obtained in settlement.  *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010)

1  (noting that "wage and hour cases on behalf of low wage workers can be difficult to prove on a class

2  basis").  Borgen Decl. ¶ 25.

3         Accordingly, the amount of risk in obtaining class certification and prevailing on the merits

4  supports final approval of settlement.

5       **3.**      **The Expense, Complexity, and Potential for Delay in Litigating this Case Through**

6                 **Trial Supports Final Approval of Settlement**

7         This factor balances the risk of continued litigation against the immediate, guaranteed benefit of the

8  proposed settlement.  *Vasquez*, 266 F.R.D. at 489.  "In most situations, unless the settlement is clearly

9  inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain

10  results."  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526 (quoting 4 Alba Conte & Herbert B. Newberg,

11  *Newberg on Class Actions* § 11:50 at 155 (4th ed. 2002)); *see also Vasquez*, 266 F.R.D. at 489 ("It has been

12  held proper to take the bird in hand instead of a prospective flock in the bush.") (quoting *Oppenlander v.*

13  *Standard Oil Co. (Ind.)*, 64 F.R.D. 597, 624 (D. Colo. 1974).

14         The resolution of Plaintiff's claims through further litigation would be costly, complicated, and

15  protracted.  Borgen Decl. ¶ 26.  Class certification and merits discovery would include, among other things,

16  the production of voluminous documents and data, numerous manager, class member, and person most

17  knowledgeable depositions, class member outreach, and expert analysis.  *Id.*  Further litigation would also

18  likely involve extensive motion practice, including motions to compel, motions for class certification and

19  decertification, and motions for summary judgment.  *Id.*  Assuming Plaintiff is successful in certifying this

20  matter as a class action, she would also be required to prove her claims in a lengthy and complex jury trial.

21  *Id.*  And even if Plaintiff prevailed on the merits of her claims, she faces further risk and delay arising from

22  likely appeals.  Accordingly, the resolution of this matter through continued litigation would require the

23  expenditure of substantial attorney time and out-of-pocket litigation expenses over the course of several

24  years of litigation.  This factor weighs in favor of final approval of settlement.

25       **4.**      **The Amount Offered in Settlement Supports Final Approval**

26         Balanced against these risks, the settlement amount of $2,750,000 is fair, reasonable, and adequate.

27  The proposed settlement provides $2,750,000 in guaranteed monetary relief to the Settlement Class, with

28  settlement class members receiving a pre-tax average award of approximately $607.  ECF No. 58 (Lewis

494776.20

Phillips Decl. Re Claims Received & Calculation of Estimated Award ¶ 5).  At Plaintiff Morazan's hourly rate of $12.25, the average settlement amount equals 49.55 hours of straight-time wages.  1,184 class members, who represent 36% of the settlement class, will receive awards in excess of $1,000.  *Id.*  Similarly, 1,817 or 55% of the settlement class will receive awards in excess of $500.  *Id.*  The average awards provided herein compare favorably with average awards in similar wage and hour class action settlements.  *See, e.g.*, *Williams,* 2013 WL 4525428, at *4 (providing average award of $108 in wage and hour class settlement involving claims for missed meal and rest periods, unpaid straight-time and overtime, and failure to reimburse for uniform and equipment expenses); *Barne*, 2013 WL 3988804, at *2 (providing average award of $146.53 and maximum award of $719.02 in wage and hour class settlement involving claims for unpaid straight-time and overtime and failure to reimburse expenses); *Wren*, 2011 WL 1230826, at *37 (providing average award of $207.69 in in wage and hour class settlement involving claims for unpaid straight-time and overtime).  Thus, the proposed settlement will provide meaningful monetary relief to the settlement class.  This factor supports final approval of settlement.

### 5.    The Settlement Class has Responded Favorably to the Proposed Settlement

A small number of objectors and opt outs is strong evidence that the proposed settlement is fair, reasonable, and adequate.  *In re Toyota Motor Corp.,* 2013 WL 3224585, at *12; *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.")

As discussed above, very few class members have objected or opted out of the settlement.  Only seven class members out of 3,307, or .21% of the settlement class, have requested exclusion.  Keough Decl. ¶ 12, Ex. B.  Similarly, only four class members, or .12% of the settlement class, have submitted objections.  *Id.* ¶ 13, Ex. C.  Conversely, 1,914 class members, or 58% of the settlement class, have submitted claim forms.  Of the 1,914 class members who submitted claim forms, 640 are or were RSRs (out of 1,036 RSRs in the whole class).  Borgen Decl. ¶ 32.  The response of the class strongly favors final approval of settlement.

**6.**    **The Exchange of Informal Discovery Permitted the Parties to Evaluate the Strengths and Weaknesses of the Claims and Defenses Herein**

Extensive formal discovery is not essential to a class action settlement; counsel need only be able to make informed decisions about settlement. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("[i]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement.") (internal quotations omitted); *Glass v. UBS Fin. Servs. Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at **4-5 (N.D. Cal. Jan. 26, 2007) (approving settlement of wage and hour class action despite the absence of any formal discovery).

Although the parties conducted no formal discovery in the present matter, Aramark provided Plaintiff with extensive and materially significant informal discovery.  Borgen Decl. ¶ 17.  Specifically, Aramark provided more than twenty-five (25) collective bargaining agreements, including for the following employees: Maintenance/Plant Engineers, Wastewater Treatment Specialists, Assistant Chief Engineers, and Apprentice Engineers for Aramark's Riverside and Los Angeles facilities; Machinists from Alameda, Contra Costa, and San Joaquin Counties; Mechanics from the Sacramento area; General Office Clerks and Lead Workers from Aramark's Los Angeles, Paramount, and Santa Ana facilities; laundry, dry cleaning, and maintenance services employees in Aramark's Oakland, Concord, Hayward, and San Jose facilities; Aramark's laundry, dry cleaning, and maintenance services employees in Aramark's Bakersfield, Fresno, and Modesto facilities; "Production Employees"[5] from Aramark's Chico, Lompoc, Los Angeles, Oxnard, Sylmar, Paramount, Redding, Riverside, Sacramento, San Diego, and Santa Ana facilities.  *Id.*  Aramark also provided Plaintiff with the collective bargaining agreement applicable to RSRs.  *Id.*  These collective bargaining agreements provide information regarding the terms and conditions of employment, wage rates, hours worked, and meal and rest period provisions applicable to the class members.  *Id.*

In addition, Defendants provided Plaintiff with voluminous data (including thousands of rows of time-keeping and payroll data), samples and spreadsheets reflecting the employees' time worked, and supporting records, including time records, meal period logs, meal period waiver forms, written policies

---

[5] "Production Employees" include, but are not limited to, washers, extractor/puller-loader/heavy tumbler, utility, operators, feeder/folder/stacker/towel folder/spreader, truck loader/wet sorter/roller towel winder.

and compliance memoranda regarding timekeeping and meal and rest periods, and other evidence of meal

breaks for sampling periods during the class period for approximately ten (10) of Defendants' locations in

California and covering more than 1,000 employees. *Id.* ¶ 18. This enabled Plaintiff to accurately estimate

the range of possible class-wide recoveries. Plaintiff's damages calculations were performed by an in-

house statistician with significant experience calculating damages in similar wage and hour class actions.

*Id.*

In sum, the information provided by Defendants prior to the mediation permitted Plaintiff to

evaluate the strengths and weaknesses of Plaintiff's claims, and negotiate a fair, reasonable, and adequate

settlement. *See Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D.

Cal. Sept. 11, 2008) ("approval of a class action settlement is proper as long as discovery allowed the

parties to form a clear view of the strengths and weaknesses of their cases"); *Boyd v. Bechtel Corp.*, 485 F.

Supp. 610, 617 (N.D. Cal. 1979). This factor weighs in favor of final approval of settlement.

### 7. No Government Entity is Involved in the Settlement

The participation of a governmental entity "serves to protect the interest of the class members."

*Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). This settlement does not involve a

government entity. On August 31, 2012, Plaintiff informed the California Labor and Workforce

Development Agency ("LWDA") of her intent to seek penalties pursuant to the Private Attorney General

Act of 2004 ("PAGA"). ECF No. 1 (Complaint, Ex. A). The LWDA did not respond to this notice and has

not taken any action to investigate Plaintiff's claims. Therefore, this factor does not weigh in favor or

against approval of the proposed settlement.

### B. The Court Should Finally Certify the Settlement Class

As discussed in Plaintiff's Motion for Preliminary approval, the Settlement Class satisfies the

numerosity, commonality, typicality, and adequacy requirements established by Federal Rule of Civil

Procedure 23(a). *See* ECF No. 29 (Pls.' Mot. for Prelim. Approval at 10-11). In addition, certification

pursuant to Rule 23(b)(3) is appropriate because common questions of law and fact predominate over any

individual questions. *See id.* at 12-13. Plaintiff incorporates by reference the points and authorities

supporting class certification discussed in her preliminary approval motion. There are no changed

494776.20

circumstances that warrant decertification of this matter.  Final certification of the settlement class is appropriate.

**C.      No Settlement Class Members Have Objected to the Service Award for Plaintiff Morazan**

The single objection filed on behalf of the four settlement class members does not oppose the requested service award for Plaintiff Morazan.  Accordingly, the response of the class supports the fairness of the requested service award.  *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, No. C 06-3903 TEH, 2008 WL 7863877, at *1 (N.D. Cal. Oct. 22, 2008) (noting absence of objections and approving $25,000 service award).

**D.      The Objection of the Marincovich Plaintiffs Should be Overruled**

**1.      Objectors' Contentions Regarding the Adequacy of the Settlement Amount Lack Merit**

With respect to the settlement amount, the gravamen of Objectors' claims is that Plaintiff should have obtained more money for the settlement class.  According to Objectors, Plaintiff should not have agreed to settle for $2,750,000 because the class is entitled to tens of millions of dollars in damages, including $6.6 million in wage statement penalties, PAGA penalties of $27.5 million, and $2.5 million for meal and rest period damages.  ECF No. 71 (Objection at 21-23).

Well-settled case law establishes the invalidity of this objection.  The Ninth Circuit has repeatedly held that a class settlement should not be "judged against a hypothetical or speculative measure of what might have been achieved by the negotiators."  *Officers for Justice*, 688 F.2d at 625; *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012) ("As an initial matter, we reject Objectors' argument insofar as it stands for the proposition that the district court was required to find a specific monetary value corresponding to each of the plaintiff class's statutory claims and compare the value of those claims to the proffered settlement award."); *Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."); *Linney*, 151 F.3d at 1242 ("Thus, the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.  As the Second Circuit has pointed out: The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be

1  disapproved.") (internal quotations and citations omitted).  This reasoning applies with special force to the

2  present matter due to the significant risk of defeat at class certification and on the merits.  Borgen Decl. ¶¶

3  24-25.

4         In presenting the Court with unrealistic damages calculations, Objectors implicitly request that the

5  Court find in favor of Plaintiff on class certification of all of her claims, as well as liability and damages on

6  all of her claims.  Making such assumptions, however, is contrary to controlling Ninth Circuit authority:

7  "Therefore, the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the

8  merits.  Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of

9  fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation

10 and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for*

11 *Justice*, 688 F.2d at 625; *Rodriguez*, 563 F.3d at 964 (same); *Linney*, 151 F.3d at 1242 (same).  This Court

12 should decline Objectors' request that it make merits determinations in reviewing the fairness, adequacy,

13 and reasonableness of this present settlement.

14        It is also well settled that this Court need not consider the availability of penalties when determining

15 the fairness of the settlement amount.  In *Rodriguez*, objectors to an antitrust settlement claimed that the

16 district court erred in failing to consider the availability of treble damages when evaluating a class

17 settlement.  *Rodriguez*, 563 F.3d at 964.  The Ninth Circuit rejected the objectors' arguments, holding that

18 the objectors improperly "compared the settlement amount to the best possible outcome for the class,

19 without taking into account the significant difference between the class's estimate and the defense's." *Id*.

20 The Ninth Circuit also found that "courts do not traditionally factor treble damages into the calculus for

21 determining a reasonable settlement value" and that approving a settlement amount that represented 10% of

22 the plaintiffs' estimated trebled class damages was not an abuse of discretion.  *Id*. at 965.  It should also be

23 emphasized that the amount of PAGA penalties is discretionary in nature, and that courts "may award a

24 lesser amount than the maximum civil penalty" if the application of PAGA would produce an "unjust,

25 arbitrary and oppressive, or confiscatory" result.  Cal. Lab. Code § 2699(e)(2).  In fact, Courts frequently

26 approve class action settlements that provide only small PAGA allocations.  *See, e.g.*, *Lazarin v. Pro*

27 *Unlimited, Inc.,* No. C11-03609 HRL, 2013 WL 3541217, at *2 (N.D. Cal. July 11, 2013) (approving

28 $7,500 PAGA allocation); *Garcia v. Gordon Trucking, Inc.,* No. 1:10-CV-0324 AWI SKO, 2012 WL

5364575, at *3 (E.D. Cal. Oct. 31, 2012) (approving $10,000 PAGA allocation); *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *9 (N.D. Cal. Apr. 3, 2009) (approving $1,500 PAGA allocation).  Accordingly, it is fair, reasonable, and adequate for Plaintiff to have settled this matter for 75% of the class's estimated "hard" damages (unpaid wages, meal and rest period premiums, and interest) and 28% of the class's estimated total damages (unpaid wages, meal and rest period premiums, statutory penalties and interest).

### 2.   Objectors' Claim that the Plaintiff has Failed to Provide Adequate Information Regarding Class Damages is Unfounded

Finally, Objectors claim that Plaintiff has not provided the Court with Aramark's potential liability. This is plainly false.  Plaintiff has provided estimates of class damages in its preliminary approval papers and in the present submission.  ECF No. 26 (Ho Decl. Pl.'s Mot. for Prelim. Approval ¶ 20); Borgen Decl. ¶¶ 19-22.

The absence of damages estimates specifically for RSRs does not detract from the fairness of the settlement.  Class Counsel considered the overtime and deduction claims alleged in the *Marincovich* matter, and concluded that those claims have little, if any, value.  Objectors face significant obstacles to prevailing on their claim for overtime.  As a threshold matter, Objectors' employment is governed by a valid collective bargaining agreement ("CBA").  ECF No. 71 (Objection at 12).  Employees subject to CBAs are exempted from the overtime requirements of the California Labor Code if certain requirements are met.  Cal. Lab. Code § 514 ("Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.").  Class Counsel reviewed the CBA applicable to RSR class members and concluded that Aramark has a strong defense against the RSR overtime claims.  Borgen Decl. ¶ 28.  Assuming Objectors can overcome Aramark's California Labor Code § 514 defense, they would also be required to demonstrate that their claims are not exempted by the California Motor Carrier Act.  *See* Cal. Code Regs., tit. 8, §§ 11010(3)(A)(2)(a) (manufacturing), 11060(3)(J)(1) (laundry), 11090(3)(L)(1) (transportation); *see also Collins v. Overnite Transp. Co.*, 105 Cal. App. 4th 171, 180 (2003).

494776.20

Objectors' meal and rest period claims are also likely preempted by the Federal Aviation Administration Authorization Act of 1994 ("FAAAA").  *See, e.g., Cole v. CRST, Inc.*, No. EDCV 08-1570-VAP (Opx), 2012 WL 4479237, at *4 (C.D. Cal. Sept. 27, 2012) ("California's Meal and Rest Break Laws are preempted by the FAAAA because the laws affect a carrier's routes, services, and prices."); *Campbell v. Vitran Exp., Inc.,* No. CV 11–05029–RGK (SHx)*,* 2012 WL 2317233, at *4 (C.D. Cal. June 8, 2012); *Aguiar v. Cal. Sierra Exp., Inc*., No. 2:11–cv–02827–JAM–GGH, 2012 WL 1593202, at *1 (E.D. Cal. May 4, 2012); *Esquivel et al. v. Vistar Corp. et al.,* No. 2:11-cv-07284-JHN-RJWx, 2012 WL 516094, at **4-6 (C.D. Cal. Feb. 8, 2012) (same); *Dilts v. Penske Logistics LLC*, 819 F. Supp. 2d 1109, 1124-25 (S.D. Cal. 2011).[6]

Finally, Class Counsel reviewed the Collective Bargaining Agreement that forms the basis of Objectors' deduction claims, and concluded that such deductions were authorized pursuant to the terms and conditions of that contract.  Borgen Decl. ¶ 28.

Accordingly, it was fair and reasonable for Class Counsel to attribute little value to the *Marincovich* claims.  Indeed, there can be no question that RSRs compensation from this settlement is fair and reasonable.  The Motor Carrier Act and FAAAA defenses do not apply to non-RSR class members.  Yet the amounts RSRs are being paid in this settlement are significant and compensate RSRs for the deduction claim that Objectors claim was overly discounted in settlement (even though there is also a strong defense to that claim).

**3.      The Settlement was the Product of Non-Collusive, Arm's-Length Negotiations**

Objectors claim that there are "suspicious circumstances surrounding the settlement."  ECF No. 71 (Objection at 11).  However, other than seizing on Class Counsel's familiarity with defense counsel, Objectors point to no conduct on behalf of Class Counsel that would suggest collusion.   To the contrary, the circumstances surrounding the settlement demonstrate that the proposed settlement was the product of non-collusive, arm's-length negotiations.  On March 4, 2013, the Parties participated in mediation facilitated by Mark Rudy.  Mr. Rudy is a skilled and experienced mediator with extensive knowledge of employment matters, including wage and hour class actions.  Borgen Decl. ¶ 23.  The mediation began in

---

[6] Aramark will submit separate briefing that expands on the legal defenses applicable to the *Marincovich* claims.

the morning and extended well past the close of business.  *Id.*  This adversarial mediation resulted in a

written memorandum of understanding that memorialized the core terms of the proposed settlement herein.

*Id.*  Thereafter, the Parties spent another two (2) months negotiating the long form settlement agreement,

with significant back and forth on the details of the settlement.  *Id.*  Based on these facts, the settlement is

entitled to a presumption of fairness.  *See Hanlon,* 150 F.3d at 1027 (affirming trial court's approval of

class action settlement where parties reached agreement after several months of negotiation and the record

contained no evidence of collusion); *Wren,* 2011 WL 1230826, at *14 (finding that settlement reached after

two mediation sessions before an experienced and retired judge was reached in a "procedurally sound

manner and that it was not the result of collusion or bad faith by the parties or counsel"); *Satchell v. Fed.*

*Exp. Corp.*, No. C 03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an

experienced mediator in the settlement process confirms that the settlement is non-collusive."); 4 William

B. Rubenstein, Alba Conte, & Herbert B. Newberg, *Newberg on Class Actions* § 11:41 (4th ed. 2013)

("Settlements are afforded a presumption of fairness if (1) the negotiations occurred at arm's length;

(2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation;

and (4) only a small fraction of the class objected.").  Objectors have provided nothing more than

conjecture and speculation in support of their claim of collusion.  This objection to the settlement should be

rejected.

### 4.   Plaintiff Morazan is an Adequate Class Representative

Objectors also challenge Plaintiff Morazan's adequacy to represent the settlement class.  In order to

satisfy the adequacy requirement of Rule 23(a), the plaintiff must establish that (1) the class representative

and her counsel do not have a conflict of interest with the class; and (2) the class representative and her

counsel will vigorously prosecute the action on behalf of the class.  *Hanlon,* 150 F.3d at 1020.

Here, neither Plaintiff Morazan nor Class Counsel have any conflicts with the settlement class.

Plaintiff Morazan shares with the settlement class the same interest of obtaining compensation from

Aramark for alleged wage and hour violations.  *See, e.g.*, *Vasquez v. Coast Valley Roofing, Inc.*, 670 F.

Supp. 2d 1114, 1122-23 (E.D. Cal. 2009) ("The adequacy of representation requirement is met here

because Plaintiffs have the same interests as the remaining members of the Settlement Class, i.e. obtaining

payment for wages unlawfully withheld . . . ."); *McKenzie v. Fed. Exp. Corp.*, 275 F.R.D. 290, 297 (C.D.

494776.20

1   Cal. 2011) (finding settlement class representative adequate because she alleged the same wage and hour

2   claims as the class); see also ECF No. 60 (Morazan Decl. Pl.'s Settlement Mot. & Mot. for Service Award

3   ¶ 12).  Moreover, Class Counsel have no conflicts with the class, and have significant experience

4   prosecuting wage and hour class actions.  ECF No. 26 (Ho Decl. Pl.'s Mot. for Prelim. Approval ¶¶ 7-10).

5       Objectors also contend that Plaintiff Morazan has a conflict with the settlement class because she

6   does not allege precisely the same claims as Objectors.  However, courts have soundly rejected the

7   argument that adequacy requires uniform allegations.  *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 397

8   (C.D. Cal. 2008) *aff'd* 375 F. App'x 734 (9th Cir. 2010) (finding adequacy and certifying litigation class

9   despite allegation that certain named plaintiff did not have class claims).  1 William B. Rubenstein, Alba

10  Conte, & Herbert B. Newberg, *Newberg on Class Actions* § 3:62 (5th ed. 2011) ("Courts generally reject

11  the argument that an intra-class conflict exists when divergent theories of liability would benefit different

12  groups within the class.").

13      Objectors also argue that Plaintiff Morazan has not vigorously represented the class because she

14  should have obtained more in settlement, and should have considered RSR damages during settlement

15  negotiations.  ECF No. 71 (Objection at 2-3).  As discussed in Section IV.E.1 above, these arguments are

16  unfounded.  The objection to Plaintiff Morazan's adequacy should be rejected.

17      **5.    Plaintiff Morazan's Claims are Typical of Those of the Settlement Class**

18      Objectors also claim that Plaintiff Morazan's claims are not typical of those held by RSR.  This

19  contention is misplaced.  "Typicality refers to the nature of the claim or defense of the class representative,

20  and not to the specific facts from which it arose or the relief sought.  The test of typicality is whether other

21  members have the same or similar injury, whether the action is based on conduct which is not unique to the

22  named plaintiffs, and whether other class members have been injured by the same course of conduct."

23  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotations and citation omitted).

24  The typicality requirement is met if the named plaintiff's claims "are reasonably co-extensive with those of

25  absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  *See* 1 *Newberg*

26  *on Class Actions* § 3:28 (Rule 23(a) only requires that the class claims are fairly encompassed by the

27  named plaintiffs' claims).

28

494776.20

1    In the employment context, it is unnecessary for a class representative to have worked in all of the

2    job categories he or she seeks to represent, or have been subject to precisely the same employment

3    practices, in order to satisfy the typicality requirement.  1 *Newberg on Class Actions* § 3:38 ("In

4    employment cases, the proposed class representatives' claims are generally held to be typical of the class

5    members' claims if the representatives hold positions somewhat similar to those of the class members, even

6    if the class representatives do not hold every job position in the class, were not injured as severely as every

7    member of the class, or were not subject to the exact same injurious employment practices as every

8    member of the class."); *Staton*, 327 F.3d at 957 (rejecting argument that the plaintiffs did not satisfy the

9    typicality standard because "class counsel did not provide clear documentation that each job category had a

10   class representative for each type of discrimination claim alleged."); *Dukes,* 509 F.3d at 1184 (rejecting

11   argument that the class representatives were not typical because "only one of six class representative holds

12   a salaried management position, and she holds a somewhat low-level position" and stating that "the lack of

13   a class representative for each management category does not undermine Plaintiffs' certification goal.");

14   *see also Cornn v. United Parcel Serv. Inc.*, No. C03-2001 TEH, 2005 WL 588431, at *8 (N.D. Cal.

15   Mar. 14, 2005) *on reconsideration in part,* No. C03-2001 TEH, 2005 WL 2072091 (N.D. Cal. Aug. 26,

16   2005); *Davis v. Four Seasons Hotel Ltd.*, 277 F.R.D. 429, 437 (D. Haw. 2011) *report and recommendation*

17   *adopted,* No. Civ. 08-00525 HG-BMK, 2011 WL 4590393 (D. Haw. Sept. 30, 2011); *Wiegele v. Fedex*

18   *Ground Package Sys., Inc.*, No. 06cv1330, 2008 WL 410691, at *5 (S.D. Cal. Feb. 12, 2008) *abrogated on*

19   *other grounds by Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009); *Alba v. Papa*

20   *John's USA, Inc.*, No. CV 05-7487 GAF (CTx), 2007 WL 953849, at *8 (C.D. Cal. Feb. 7, 2007).

21   Here, Plaintiff Morazan's claims are reasonably coextensive with those of the settlement class,

22   including those of RSRs.  While they performed different job duties, Plaintiff Morazan and Objectors were

23   subject to similar compensation policies and practices that gave rise to substantially similar wage and hour

24   claims.  Both the *Morazan* and the *Marincovich* matters include nearly identical causes of action.  For

25   example, both the *Marincovich* and *Morazan* complaints include claims pursuant to the following statutes:

26   California Labor Code §§ 510, 511, and 1194 (unpaid straight-time and overtime wages for hourly

27   employees), 226.7 (meal and rest periods), 203 (waiting time penalties), 226 (inaccurate wage statements);

28   2698 *et seq*. (PAGA penalties). *Compare* ECF No. 38-1 (*Marincovich* Complaint) *with* ECF No. 23

23

494776.20

1   (*Morazan* Complaint).  As the Ninth Circuit explains, the claims of a class representative do not need to be

2   identical to those of the class members.  *Hanlon*, 150 F.3d at 1020.  Objectors provide no authority to the

3   contrary.  Accordingly, Objectors have failed to demonstrate that the differences between their claims and

4   those of Plaintiff Morazan defeat typicality.

5   ### 6.   The Release is Fair and Reasonable

6   Objectors claim that the release set forth in the settlement agreement is overly broad.  The proposed

7   settlement releases all claims alleged in the Complaint, as well as any wage and hour claims and pay claims

8   that could have been asserted in this action by Aramark's non-exempt employees in California.  ECF

9   No. 26-1 (Joint Stipulation § 2.26).  Class action releases of this scope and nature are commonly approved.[7]

10  Objectors had the opportunity to exclude themselves from the release, but chose not to do so.  Moreover,

11  every settlement class member will receive their pro-rata share of the settlement fund regardless of whether

12  they submit claim forms.  The average estimated award is $607, and 36% of the settlement class is set to

13  receive awards of $1,000 or more.  The settlement class members are receiving fair and adequate

14  compensation for the release of their claims.  Objectors have failed to demonstrate that the release is unfair

15  to any of the class members.

16  ### 7.   The Requested Attorneys' Fees are Reasonable

17  Objectors claim that Class Counsel's fee request is unfair.  ECF No. 71 (Objection at 11-12).[8]  In

18

---

19  [7] The following class settlements include similar releases and were approved by District Courts in the Ninth
    Circuit in the past several months.  *See, e.g.*, *Williams*, 2013 WL 4525428, at *2 ("In exchange, the class

20  members agree to release the claims that were or could have been asserted in this action against
    Defendants"); *Zulewski v. The Hershey Co.*, No. 4:11-CV-05117-KAW, 2013 WL 4570153, at *2 (N.D.

21  Cal. Aug. 16, 2013) ("This release of the Released Claims is general and comprehensive in nature and
    includes all claims and potential claims against the Hershey Releasees which were brought by the *Zulewksi*

22  Action…"); *Russell v. United States*, No. C 09-03239 WHA, 2013 WL 3988778, at *5 (N.D. Cal. Aug. 2,
    2013) ("Those persons fully release and discharge the United States and AAFES and any of its affiliates

23  from any and all liabilities on claims which they have or may claim now or in the future to have, that were
    or could have been alleged or asserted against the United States or AAFES or any of its affiliates, relating

24  to any claims for repayment of overcharged interest on the credit cards issued in the present action.");
    *Fraser v. Asus Computer Int'l*, No. C 12-00652 WHA, 2013 WL 3595940, at *3 (N.D. Cal. July 12, 2013)

25  ("Those persons fully release and discharge Asus and its affiliates from any and all liabilities on claims
    which they have or may claim now or in the future to have, that were or could have been alleged or asserted

26  against Asus or any of its affiliates, relating to any claims that the TF201 suffers from GPS and WiFi
    strength or reception issues and any alleged misrepresentation or failure to disclose concerning such GPS or

27  WiFi issues."); *Barbosa v. Cargill Meat Solutions Corp.*, No. 1:11-cv-00275-SKO, 2013 WL 3340939, at
    *25 (E.D. Cal. July 2, 2013) (releasing "all claims for penalties that could have been brought based on the

28  violations alleged in the Complaint").

[8] Objectors do not take issue with Plaintiff's request for reimbursement of $10,148.19 in out of pocket

24

494776.20

1    this regard, Objectors allege that Class Counsel did not vigorously represent the class because they did not

2    review Objectors' collective bargaining agreement.  *Id.*  This argument is not only inaccurate, but bears

3    little relation to Class Counsel's fee request.  Borgen Decl. ¶ 28 (declaring that Class Counsel reviewed the

4    CBA applicable to RSR class members).  Objectors do not challenge Class Counsel's hourly rates or claim

5    that the amount of time expended on this litigation was unreasonable.  Similarly, Objectors provide no

6    authority or reasoning to justify a departure from the 25% common fund fee award requested by Class

7    Counsel.  Objectors cite *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) in

8    support of their claim that Class Counsel have sacrificed the interests of the class for personal gain.  As

9    discussed in Section IV.E.3, this allegation is false.  Furthermore, *In re Bluetooth* is nothing like this case.

10   In *In re Bluetooth*, the parties sought approval of a class settlement that provided no monetary benefit to the

11   class and $800,000 in attorneys' fees.  *Id.* at 938.  In contrast, Class Counsel herein seek 25% of a

12   $2,750,000 common fund.  As courts before and after *In re Bluetooth* have consistently held, common fund

13   fee awards of 25% or greater are reasonable and should be approved.  *See, e.g.*, *Williams*, 2013 WL

14   4525428, at *7 (S.D. Cal. Aug. 26, 2013) (30% of common fund); *In re TFT-LCD (Flat Panel) Antitrust*

15   *Litig.*, No. M 07-1827 SI, 2013 WL 1365900, at *9 (N.D. Cal. Apr. 3, 2013) (28.5% of common fund);

16   *Franco v. Ruiz Food Prods., Inc.*, No. 1:10-cv-02354-SKO, 2012 WL 5941801, at *25 (E.D. Cal. Nov. 27,

17   2012) (33% of common fund); *Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO, 2012 WL

18   5364575, at *11 (E.D. Cal. Oct. 31, 2012) (court approved attorneys' fees in the amount of 33 percent of

19   the common fund) Accordingly, the objection to Class Counsel's requested fees should be rejected.

20            It also bears mention that since filing their Motion for Reasonable Attorneys' Fees, Costs, and

21   Expenses, through October 10, 2013, Class Counsel have expended a further 137.7 hours on this matter,

22   which has increased their lodestar by $59,555.  Borgen Decl. ¶ 36.  Based on this increased lodestar, Class

23   Counsel's fee request of 25% now represents a reduced multiplier of 1.49.  *Id.* The additional anticipated

24   work to secure final approval and oversee the fund distribution process will further increase Class

25   Counsel's lodestar and reduce the multiplier.  *Id.*

26

27

28
_____

costs.

## V.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court (1) finally approve the proposed settlement; (2) approve Plaintiff Morazan's requested service award of $5,000; (3) approve Class Counsel's requested fees and costs; and (4) overrule all objections to the settlement.

Dated:  October 11, 2013                          Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO


        /s/ Laura L. Ho
Laura L. Ho

Attorneys for Plaintiff and the Putative Class

494776.20